IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-CR-51-RLJ-HBG |
| | ) | |
| CHAMP TERRY SKAGGS, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Defendant Champ Terry Skaggs, Jr., who is alleged [Doc. 3] to be an individual required by law to register as a sex offender, is charged with failure to update his registration between December 2017 and March 2018, after traveling in interstate commerce, in violation of 18 U.S.C. § 2250(a) and 34 U.S.C. § 20911. The Defendant asks the Court to dismiss this charge [Docs. 28 & 45], arguing the application of the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901, et seq., to him violates the nondelegation doctrine, the *Ex Post Facto* Clause, and his right to the due process of law. The Defendant also argues that the Indictment fails to state an offense, because his 2002 Virginia conviction for sexual battery of a female is not a sex offense under SORNA. On June 20, 2019, the Supreme Court held that SORNA's provision authorizing the Attorney General to state whether the Act applies to individuals convicted of sex offenses prior to SORNA's enactment does not violate the nondelegation doctrine. *Gundy v. United States*, 139 S. Ct. 2116, 2129-30 (2019). For the reasons discussed herein, the undersigned finds that application of SORNA's registration requirements to Defendant Skaggs also does not violate the *Ex Post Facto* or Due Process Clauses. Finally, the Court finds that the Indictment properly charges the Defendant with a violation of 18 U.S.C. § 2250(a). Accordingly, the Court

recommends that the Defendant's Motion to Dismiss [Doc. 28] and supplement [Doc. 45] be denied.

## I.       PROCEDURAL HISTORY

On April 10, 2018, the Grand Jury charged [Doc. 3] Defendant Skaggs, who is alleged to be a previously convicted sex offender required to register under SORNA, with knowingly failing to register or update his sex offender registration.[1]  On September 7, 2018, the Defendant filed a Motion to Dismiss [Doc. 28] the Indictment, arguing that Congress violated the nondelegation doctrine when it allowed the Attorney General to determine whether SORNA's registration requirements applied to persons convicted of sex offenses prior to SORNA's enactment.[2]  The Government timely responded [Doc. 29] in opposition, and the Court[3] heard argument on the motion on September 24, 2018.  At that hearing, the Defendant clarified that he was raising issues regarding the *Ex Post Facto* and Due Process Clauses, as well as the new issue of whether the Defendant was required to register as a sex offender for his 2002 Virginia misdemeanor sexual battery conviction.  The Court requested supplemental briefing on the issues raised in addition to the nondelegation clause issue.  On November 8, 2018, the Defendant filed a Supplemental Motion

---

[1] Although the Court initially released the Defendant on an unsecured bond [Doc. 12] and conditions [Docs. 13, 16 & 17], it revoked Defendant Skaggs's release on July 23, 2018 [Docs. 24 & 27].  The Defendant's renewed requests for release were denied on November 6 [Doc. 44] and December 4 [Doc. 52], 2018.

[2] As oral argument at a motion hearing on September 24, 2018 later revealed, the Defendant also sought to raise issues relating to the *Ex Post Facto* and Due Process Clauses by referencing and attaching an unpublished opinion from the Eastern District of North Carolina, *United States v. Edward Jay Wass,* No. 7:18-CR-45-BO, Order (E.D. N.C. July 5, 2018) [Doc. 28-1].

[3] Judge Clifton L. Corker was initially the assigned United States Magistrate Judge in this case.  On July 26, 2019, Judge Corker was sworn in as United States District Judge.  The instant motions were referred [Doc. 63] to the undersigned on August 26, 2019.

2

to Dismiss [Doc. 45] and five exhibits.  The Government again responded [Doc. 46] in opposition and provided a sealed exhibit [Doc. 50].

On June 20, 2019, the Supreme Court issued its ruling in *Gundy v. United States*, 139 S. Ct. 2116 (2019).  The parties appeared before the Court on June 26, 2019.  At that time, further argument on the Supplemental Motion was continued [Doc. 62], to allow defense counsel to review the Supreme Court's ruling in *Gundy* and to determine whether *Gundy* resolved the remaining issues raised in the Defendant's motions.  The motions to dismiss were referred [Doc. 63] to the undersigned on August 26, 2019.  *See* 28 U.S.C. § 636(b).

On September 5, 2019, the parties appeared before the undersigned for a motion hearing. Assistant United States Attorney Megan Lynn Gomez appeared on behalf of the Government. Assistant Federal Defender Nikki C. Pierce represented Defendant Skaggs, who was also present. At that time, Ms. Pierce stated that while the ruling in *Gundy* answered the nondelegation argument, it did not address the *ex post facto* and due process arguments raised in the Supplemental Motion.  At the conclusion of the parties' arguments on those issues, the Court took the motions under advisement.

## II.     FINDINGS OF FACT

Defendant Skaggs was convicted of sexual battery of a female, a misdemeanor, in Wise County, Virginia, on November 25, 2002 [Doc. 32-1, Judgment; *see also* Doc. 45-1, Order to Amend Indictment].[4]  He was sentenced to twelve months of incarceration to be followed by twelve months of supervised probation [Doc. 32-1].  On August 25, 2003, Defendant Skaggs registered as a sex offender and signed a Virginia Sex Offender and Crimes Against Minors

---

[4] The Government contends [Doc. 46, p.1] that Defendant was originally charged with carnal knowledge of a child thirteen (13) to fifteen (15) years of age in violation of Va. Code Ann. § 18.2-63.  The Government has not produced the original charging instrument in the 2002 case.

3

Registration Form, acknowledging his duty to re-register as a sex offender yearly for ten years [Docs. 45-5, 50]. On his initial registration form, Defendant Skaggs stated that he was convicted on November 25, 2002, of "Sexual Battery-Minor" in violation of Virginia Code Annotated § 18.2-67.4 [Doc. 50, p.2]. In a subsequent registration form, completed on May 5, 2006, Defendant Skaggs stated that his sexual battery victim was sixteen years old [Doc. 50, p.5]. Congress enacted SORNA on July 27, 2006.

On April 11, 2017, Defendant Skaggs submitted a sex offender registration form to the Virginia State police, stating that his physical and mailing address had changed and listing his address in Norton, Virginia [Exh. 3 to Sept. 24, 2018 hg]. On March 7, 2018, Defendant Skaggs gave a statement to law enforcement following his arrest [Exh. 2 to Sept. 24, 2018 hg]. In that statement, the Defendant said that he is required to register as a sex offender in Virginia annually, that he knew he was required to inform Virginia officials before leaving the state for work or a change of residence, and that he knew that he would be required to register in Tennessee, if entering the state to work or reside there [Exh. 2 to Sept. 24, 2018 hg]. On April 10, 2019, Defendant Skaggs was indicted [Doc. 3] in the instant case.

### III.    POSITIONS OF THE PARTIES

Defendant Skaggs argues [Doc. 28] that SORNA is unconstitutional as applied to him, because Congress violated the nondelegation doctrine by permitting the Attorney General to decide whether the Act applied to persons convicted of sex offenses prior to SORNA's enactment. He also contends [Doc. 45] that SORNA is unconstitutional as applied, because it constitutes a punishment imposed well after his conviction in violation of the *Ex Post Facto* Clause and his right to due process was violated because he was not notified at the time of his conviction that he would have to register as a sex offender. Finally, Defendant argues that the Government cannot

4

show that he is a sex offender under SORNA as a matter of law, because his 2002 Virginia conviction for misdemeanor sexual battery is not a sex offense under SORNA.

The Government responds [Docs. 29 & 46] that SORNA's registration requirements are not unconstitutional as applied to Defendant Skaggs. First, it maintains that Congress properly delegated to the Attorney General the ability to issue regulations regarding how SORNA would be applied to those already convicted of qualifying offenses. Second, it contends that the *Ex Post Facto* Clause is not implicated because compliance with a civil registration scheme like SORNA is not a punishment and the criminal provisions of SORNA only apply after the offender fails to register. The Government maintains that the Defendant's due process rights were not infringed because he had actual notice that he was required to register in Virginia's sex offender registry. Finally, the Government asserts that the Defendant's Virginia sexual battery conviction is a "sex offense" requiring registration under SORNA.

## IV.   ANALYSIS

The Sex Offender Registration and Notification Act, 34 U.S.C. § 20901, et seq.,[5] enacted on July 27, 2006, establishes a national system for the registration of sex offenders. The Act requires that a "sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a). At the time of SORNA's enactment, Congress delegated to the Attorney General the "authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for registration of any such sex offenders and for other

---

[5] Congress originally codified SORNA at 42 U.S.C. § 16901, et seq., and re-codified it, without amendment or alteration, at 34 U.S.C. § 20901, et seq.

categories of sex offenders who are unable to comply with subsection (b)."[6] 34 U.S.C. § 20913(d). On February 28, 2007, the Attorney General made SORNA applicable to all sex offenders, including those convicted of sex offenses prior to SORNA's enactment. 28 C.F.R. § 72.3.

Defendant Skaggs, whose conviction for sexual battery predates the enactment of SORNA, argues that SORNA is unconstitutional as applied to him. First, he argues that Congress's delegation of the determination of whether SORNA applies to pre-Act offenders to the Attorney General violates the nondelegation doctrine. Defendant Skaggs also argues that SORNA's application to him violates the *Ex Post Facto* and Due Process Clauses of the Constitution. Finally, the Defendant contends that as a matter of law, the Government cannot prove the first element of 18 U.S.C. § 2250(a), that he is a sex offender required to register under SORNA. The Court examines each of these arguments in turn.

## A. Nondelegation Doctrine

The Constitution assigns the power to legislate to Congress. U.S. Const. Art. 1 §§ 1, 8. "The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S.Ct. 2116, 2121 (2019); *see also Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935) (holding that Congress may not "abdicate or . . . transfer" its "essential legislative functions"). However, the need for "flexibility and practicality" in adapting laws to the myriad details and variations of life has long been recognized, and Congress is permitted to "lay[] down policies and establish[] standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of

---

[6] Subsection (b) of § 20913 requires a sex offender to register before completing a sentence of incarceration or, if not sentenced to incarceration, within three days of being sentenced for a sex offense.

facts to which the policy as declared by the Legislature is to apply." *Panama Refining*, 293 U.S. at 421.

The Defendant argues [Doc. 28] that in authorizing the Attorney General to determine whether SORNA applies to pre-Act offenders, Congress delegated its authority without providing any intelligible guiding principles to constrain the Attorney General's discretion. The Defendant contends that the ability to determine a statute's scope is a "core legislative function," especially with regard to criminal statutes. He asserts that the Office of the Attorney General and the Department of Justice are not scientific agencies with particular expertise in criminology and sex offenders but, instead, are police agencies, tasked with the arrest and prosecution of those who violate federal law. Thus, the Defendant maintains that SORNA violates the nondelegation doctrine, because it delegates to the Attorney General unlimited discretion to determine who is required to register.

The Government responds [Doc. 29] that our appellate court has held that Congress properly delegated to the Attorney General authority to determine whether SORNA applies to pre-Act offenders. *See United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012). "Congress's delegations under SORNA possess a suitable 'intelligible principle' and are 'well within the outer limits of [the Supreme Court's] nondelegation precedents.'" *Id.* (quoting *Whitman v. American Trucking Ass'n*, 531 U.S. 457, 474 (2001)) (alteration in original). The Government contends that the Court remains bound by this precedent unless and until the Supreme Court overrules it.

In *Gundy*, the Supreme Court decided this issue against the Defendant. 139 S. Ct. at 2129-30. The Court held that by requiring a "comprehensive" system of registration, defining "sex offenders" to include pre-Act offenders, and granting the Attorney General only temporary authority, Congress provided intelligible principles to guide the Attorney General in implementing SORNA. *Id.* at 2130 (observing that "the delegation in SORNA easily passes muster (as all eleven

7

circuit courts to have considered the question found . . .)").  At the September 5 motion hearing, defense counsel acknowledged that the Supreme Court's decision in *Gundy* controls this issue. Accordingly, the undersigned finds that the Defendant's request to dismiss the Indictment based upon an alleged unconstitutional delegation of legislative authority must be denied.

## B. *Ex Post Facto* Clause

Defendant Skaggs also argues that application of SORNA's registration requirements to him is a punishment imposed well after his conviction in violation of the *Ex Post Facto* Clause. The *Ex Post Facto* Clause in Article I, §10, of the Constitution, prohibits laws that "'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corrections v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)).  The *Ex Post Facto* Clause precludes the punishment of a defendant "for an act which was not punishable at the time it was committed."  *Weaver v. Graham*, 450 U.S. 24, 28 (1981). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when . . . punishment [is increased] beyond what was prescribed when the crime was consummated."  *Id.* at 30-31.

The Defendant argues that he was not required to register as a sex offender under either SORNA (which had yet to be enacted) or Virginia law at the time of his conviction for sexual battery on November 25, 2002.  The Defendant contends that he was not told that he was required to register as a sex offender at the time of his conviction and, at that time, Virginia law only required registration for offenders with three sexual battery convictions, not one.[7]  He states that

---

[7] In support of this contention, the Defendant relates that defense counsel contacted the Virginia attorney who prosecuted his misdemeanor sexual battery case, and that attorney opined that misdemeanor sexual battery of a female did not require sex offender registration in November 2002 [Doc. 45, p.3].

8

it was only upon his release from incarceration that his probation officer told him that he was required to register and had him sign the state registration form. The Defendant surmises that his probation officer believed that he was required to register based upon changes to Virginia law in 2003, requiring registration when the victim of sexual battery is a minor. *See* Va. Code Ann. § 9.1-902(A)(1) & (B)(2) (2003). Moreover, the Defendant asserts that his subsequent state prosecutions for failure to register as a sex offender in 2005, 2006, and 2018 (related pending charges) and his 2013 conviction for failure to register as a sex offender are also erroneous. He asserts that applying SORNA to him increases his punishment for an offense committed nearly two decades ago.

The Defendant relies on the reasoning of the Eastern District of North Carolina in *United States v. Edward Jay Wass,* No. 7:18-CR-45-BO, Order (E.D. N.C. July 5, 2018) [Doc. 28-1].[8] In *Wass*, the court dismissed the indictment charging the defendant with a violation of 18 U.S.C. § 2250(a) [Doc. 28-1, p.10]. It held "SORNA's registration requirement, while civil in description, to be punitive in nature" and, thus, SORNA's "application to individuals who committed registrable offenses prior to its passage is a violation of the *Ex Post Facto* Clause of the Constitution" [Doc. 28-1, p.10]. The North Carolina district court found SORNA's registration requirements to be punitive, because they prevent the offender from living and working freely like other citizens [Doc. 28-1, p.8]. The court also observed that SORNA makes the offender's personal information available online, requires that the offender appear in person annually to register, and requires that the offender constantly update his or her information [Doc. 28-1, p.8]. The court recognized that many states and localities restrict where sex offenders may live or work [Doc. 28-1, p.8]. Moreover, the court found that SORNA's declaration of purpose illustrates that

---

[8] The Defendant attached a copy of this unpublished Order as an exhibit to his Motion to Dismiss [Doc. 28]. Citation to this Order will be to the page numbers in the attached exhibit.

it is intended for deterrence and retribution, which are traditional aims of punishment [Doc. 28-1, p.8]. *See* 34 U.S.C. § 20901. Finally, the court opined that "the public nature of the registry makes it a tool of public shame, which has been a consistent mechanism for punishment in human history" [Doc. 28-1, p.8 (citing *Smith v. Doe*, 538 U.S. 84, 98 (2003))].

The Government points the Court to the settled precedent in this Circuit, that SORNA's application to offenders convicted prior to its enactment does not violate the *Ex Post Facto* Clause. *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012). In *Felts*, the court relied on the Supreme Court's holding in *Smith v. Doe*, 538 U.S. 84, 105-06 (2003), that the Alaska sex offender registration statute "is not punitive, but civil in nature" and, thus, its retroactive application did not violate the *Ex Post Facto* Clause. *Id.* In assessing whether the Alaska statute was civil or criminal, the Supreme Court first examined the legislature's intent as revealed in the text of the statute. 538 U.S. at 93. Like the Alaska statute in *Smith*, SORNA also states that its purpose to "establish a comprehensive national system for the registration of [sex] offenders," "[i]n order to protect the public from sex offenders and offenders against children[.]" 34 U.S.C § 20901; *see Gundy*, 139 S.Ct. at 2121 (observing that SORNA's express purpose is to create a national system for the registration of sex offenders in order to protect the public); *Smith*, 538 U.S. at 94 (identifying the protection of the public against sex offenders as the main government interest in enacting the Alaska statute).

In determining whether the legislature intended the Alaska sex offender registry to be regulatory or punitive, the Supreme Court in *Smith* also examined other attributes of the statute, such as where it was codified and its enforcement procedures. *Id. at 94.* SORNA is codified in Title 34, which governs "Crime Control and Law Enforcement," rather than in Title 18, which contains statutes relating to "Crimes and Criminal Procedure." The Court finds that like its stated purpose, the location of SORNA reveals Congress's intent that it be civil in nature. With regard

to enforcement provisions, the Court notes that in SORNA, in order "[t]o strengthen state enforcement of registration requirements, Congress established, as a funding condition, that '[e]ach jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.'" *Carr v. United States,* 560 U.S. 438, 453 (2010) (quoting 34 U.S.C. § 20913). "Meanwhile, Congress in § 2250 exposed to federal criminal liability, with penalties of up to 10 years' imprisonment, persons required to register under SORNA over whom the Federal Government has a direct supervisory interest or who threaten the efficacy of the statutory scheme by traveling in interstate commerce." *Id.* The Court finds the locating of § 2250 in Title 18, away from the registration requirements, also supports a finding that SORNA is regulatory or civil in nature.

After looking at the legislature's intent, the Supreme Court in *Smith* also examined whether the *effects* of the Alaska sex offender registry were punitive, examining specifically whether "the regulatory scheme[] has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." 538 U.S. at 97. The Supreme Court rejected the argument that the Alaska sex offender registry was the equivalent of public shaming, holding that "publicity and the resulting stigma" are not central to the "objective of the regulatory scheme," that the purpose of the statute is to "inform the public for its own safety, not to humiliate the offender," and the notification is passive, requiring the public to seek out the information. *Id.* at 99, 105. The Supreme Court also held that the Alaska act does not impose any physical restraint, nor does it limit the sex offender's activities. *Id.* at 100. Instead, the sex offender "remains free to change jobs or residences." *Id.* The Court also held that the mandatory reporting feature of the act was not punitive: "[T]he registration requirements make a valid

11

regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause." *Id.* at 102. The undersigned finds that this analysis also applies to SORNA.

In the instant case, Defendant Skaggs argues that SORNA is more punitive than the Alaska sex offender registration scheme analyzed in *Smith*. Our appellate court also rejected this argument in *Felts*:

> [The defendant] attempts—to little avail—to distinguish SORNA from the Alaska statute in question, but fails to address the unanimous consensus among the circuits that SORNA does not violate the *Ex Post Facto* Clause. [The defendant's] crime of failing to update his sex offender registry after the enactment of SORNA was entirely separate from his crime of rape of a child and aggravated sexual battery.

*Felts*, 674 F.3d at 606. In other words, the crime that Congress seeks to punish in SORNA's enforcement provision is the failure to register as required upon relocation, work, or education in a new state, not the initial sex offense. *See also Carr,* 560 U.S. at 458 (declining to reach the *ex post facto* issue but holding that Congress intended 18 U.S.C. § 2250(a) to apply only to interstate travel occurring after SORNA's enactment). Finally, the Court observes that in *Gundy*, the Supreme Court discussed at length that SORNA requires pre-Act offenders to register as sex offenders, yet made no mention of an *ex post facto* violation. 139 S. Ct. at 2124. The Court finds that SORNA's registration requirements do not violate the *Ex Post Facto* Clause, because they are not punitive but, instead, are civil in nature.

Defendant Skaggs also appears to argue that the 2003 changes in the Virginia Sex Offender and Crimes Against Minors Registry Act, Va. Code Ann. §§ 9.1-900 to -923, also violate the *Ex Post Facto* Clause by requiring him to register as a sex offender even though his conviction occurred prior to their enactment. The undersigned finds that the Virginia courts have settled this issue against the Defendant. In *Kitze v. Commonwealth*, the Virginia Court of Appeals held that the Virginia Sex Offender Registry (the version existing prior to 2003) is regulatory, not punitive,

12

and that the requirement to register as a sex offender is "*not* penal[.]"  475 S.E.2d 830, 832 (Va. Ct. App. 1996), *cert. denied*, 522 U.S. 817 (1997).  Thus, the court held that "the sex offender registration requirement does not violate the constitutional prohibitions against *ex post facto* laws," even though the statute was enacted after the defendant's offenses and his first trial, which was reversed on appeal.  *Id.* at 220 (noting that the enactment of the Sex Offender Registry became effective prior to the defendant's guilty plea during his second trial).  The Virginia Court of Appeals subsequently applied its holding in *Kitze* to subsequent amendments to the Sex Offender and Crimes Against Minors Registry Act, under which the instant Defendant was required to register in 2003.  *Baugh v. Commonwealth*, 809 S.E.2d 247, 251 (Va. Ct. App. 2018) (finding the 2007 amendments to the act did not transform the civil statute into a criminal penalty).  Accordingly, like SORNA, the Virginia Sex Offender and Crimes Against Minors Registry Act is a civil regulatory scheme, and its application to Defendant Skaggs after his 2002 conviction does not violate the *Ex Post Facto* Clause.

## C.  Due Process Clause

The Defendant also argues that at the time he entered a guilty plea to misdemeanor sexual battery in Virginia, he was not advised that he would be required to register under Virginia and federal law and would be subject to severe criminal penalties for the failure to do so.  He contends that because the requirement that one register as a sex offender, potentially for the remainder of one's life, is a particularly severe penalty that limits the individual's residential and employment opportunities, it is a violation of due process to fail to advise the Defendant of this consequence at the time of his guilty plea.  The Defendant likens his situation to that in *Padilla v. United States*, in which the Supreme Court held that counsel provided deficient representation in failing to advise the defendant that he could be deported as a consequence of his guilty plea.  559 U.S. 356, 368-69 (2010).  The Supreme Court observed that deportation is a "particularly severe 'penalty,'" even

though it "is not, in a strict sense, a criminal sanction" and "removal proceedings are civil in nature[.]" *Id.* at 365. Defendant Skaggs argues that, like deportation, a lifetime registration requirement is a particularly burdensome consequence that arises automatically from the conviction for a sex offense. He also contends that the requirement to register is so closely connected to the sex offense of conviction that, like deportation, it is "difficult to classify as either a direct or collateral consequence." *Id.* at 366.

The Defendant notes that two state courts have extended the reasoning in *Padilla* to sex offender registration requirements. *See People v. Fonville*, 804 N.W.2d 878, 894 (Mich. Ct. App. 2011); *Taylor v. State*, 698 S.E.2d 384, 388 (Ga. Ct. App. 2010). The Defendant argues that his 2002 guilty plea to sexual battery of a female was not knowingly and voluntarily entered, because he did not know that he would be required to register as a sex offender at some point in the future. Accordingly, he contends that the application of SORNA to him imposes the requirement that he register as a sex offender without notice at the time of conviction in violation of due process.

The Government argues that the Supreme Court's ruling in *Padilla* cannot be extended to a duty to advise of the requirement to register as a sex offender, because deportation and a civil registration requirement are two different things. It asserts that SORNA is a civil registration scheme, not a punishment, and as such, it is not a consequence of which the Defendant must have been advised at his guilty plea. Moreover, the Government contends that regardless of whether the Defendant was informed of a registration requirement at the time of his guilty plea in 2002, he was unquestionably informed that he was required to register under Virginia law in 2003. It maintains that the Defendant cannot argue lack of notice when he was informed and registered for more than a decade, prior to the instant offense.

First, the Court observes that our Court of Appeals has held that "sex offender registration is a collateral consequence of a guilty plea," and that the failure to advise a defendant of the duty

14

to so register is not a basis to withdraw the guilty plea. *Blumenthal v. Curley*, No. 12-1221, 2013 WL 7141279, *2 (6th Cir. Apr. 1, 2013); *see also Leslie v. Randle*, 296 F.3d 518, 523 (6th Cir. 2002) (concluding that "that the classification, registration, and community notification provisions [of the Ohio sex offender registration statute] are more analogous to collateral consequences such as the loss of the right to vote than to severe restraints on freedom of movement such as parole"); *Rose v. Bauman*, No. 2:17-cv-10836, 2018 WL 534490, *5 (E.D. Mich. Jan. 24, 2018) (observing that the "Sixth Circuit has concluded on several occasions that the requirement to register as a sex offender is a collateral one that need not be disclosed to the defendant in order for a plea to be valid"). *Blumenthal* was decided well after *Padilla*. Indeed, despite the passing of nearly a decade since the *Padilla* decision, the Defendant points to no federal case holding that a failure to advise a defendant of his duty to register as a sex offender prior to his guilty plea is a violation of due process.[9]

Second, the Court finds that Defendant Skaggs situation is distinguishable from the defendant in *Padilla*. In *Padilla*, the Supreme Court examined whether the defendant received the ineffective assistance of counsel, because his attorney did not advise him that his guilty plea would subject him to automatic deportation. 559 U.S. at 360. The Court found defendant's counsel's representation was deficient because "counsel could have easily determined that [defendant's] plea would make him eligible for deportation simply from reading the text of the statute[.]" *Id.* at 368. However, the Court recognized that in some cases, "the deportation consequences of a particular plea are unclear or uncertain," and in those cases, the attorney need only advise the defendant that

---

[9] The Court notes that the Court of Appeals for the Armed Forces, an Article I court with appellate jurisdiction over active members of the armed forces, relied on the Supreme Court's decision in *Padilla* to hold that "in the context of a guilty plea inquiry [in a court-martial], sex offender registration consequences can no longer be deemed a collateral consequence of the plea." *United States v. Riley*, 72 M.J. 115, 121 (C.A.A.F. 2013).

the "pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. In the instant case, no one could have advised Defendant Skaggs at the time of his guilty plea in 2002 that he would be required to register as a sex offender under SORNA, which was not enacted for nearly four more years.[10]  *See Jackson v. United States,* No. 18-15028, 2019 WL 6114434, *1 (11th Cir. Nov. 18, 2019) (Mem. Opn) (affirming Northern District of Georgia's holding that counsel could not have advised defendant of SORNA, which had not been enacted at time defendant pled guilty).  In other words, the failure to advise a defendant of a consequence that does not exist is not a violation of due process.

Additionally, as argued by the Government, at the time of SORNA's enactment, Defendant Skaggs had actual notice that he was required to register as a sex offender under Virginia law.  In *Felts*, our appellate court reasoned that where the registration requirements under a state sex offender registry are congruent with or exceed that of SORNA, a defendant required to register under a state registry has "sufficient fair notice to satisfy due process" of SORNA.  674 F.3d at 604; *see also United States v. Stock*, 685 F.3d 621, 627 (6th Cir. 2012) (holding that defendant cannot claim a due process violation in SORNA's retroactive application to him, when he "admitted in his plea agreement that he knew about SORNA's registration requirement").  In the instant case, the Defendant states his probation officer advised him of his duty to register in the Virginia sex offender registry upon his release from prison in 2003.  The registration forms filed in the record advise the Defendant of his continuing duty to register.  Finally, in a statement given

---

[10] In contrast, in the two cases cited by Defendant Skaggs, the defendants were subject to the state sex offender statutes at the time of their guilty pleas and could have been so advised.  *See Fonville*, 804 N.W.2d at 894 (observing that "when, as here, the sex-offender-registration statue is 'succinct, clear, and explicit' in defining the registration requirement for the defendant's conviction, defense counsel's duty to give correct advice is likewise clear"); *Taylor*, 698 S.E.2d at 389 (finding "no dispute" that the defendant "was subject to the sex offender registration requirements at the time that he entered into his plea").

16

on March 7, 2018, the Defendant admitted to law enforcement that he knew he was required to register as a sex offender each year in Virginia, that he knew he was required to inform Virginia officials before leaving the state for work or a change of residence, and that he knew he would be required to register as a sex offender in Tennessee, if he entered that state to work or live there. Accordingly, the Court finds that Defendant Skaggs had actual knowledge of his duty to register as a sex offender and, thus, his instant prosecution under § 2250(a) does not violate his right to due process.

## D. Failure to State an Offense

At the September 5, 2019 motion hearing,[11] defense counsel asserted a fourth basis for dismissal of the Indictment, arguing that the Government assumes but cannot prove Defendant Skaggs is a "sex offender" under SORNA, because his 2002 Virginia sexual battery conviction did not require a showing of a sexual act or sexual contact. In order to show a violation of 18 U.S.C. § 2250(a), the Government must prove that the individual (1) is required to register under SORNA, (2) traveled in interstate or foreign commerce, and (3) knowingly failed to register or update his or her registration as required by SORNA. *Carr*, 560 U.S. at 445-46 (observing that the elements must be read sequentially). An offender qualifies as a sex offender if he or she is convicted of a "sex offense," which SORNA defines, in pertinent part, as "a criminal offense that has an element involving a sexual act or sexual contact with another" or "a criminal offense that is a specified offense against a minor." 34 U.S.C. § 20911(5)(A)(i)-(ii). The undersigned takes the Defendant

---

[11] At the September 24, 2018 motion hearing, Judge Corker invited the Defendant to brief the issue of whether the offense to which he entered a guilty plea in 2002 is a sex offense under SORNA. In his subsequent Supplemental Motion to Dismiss, the Defendant only alluded to this issue as a part of his *ex post facto* and due process arguments. However, at the September 5, 2019 motion hearing, the Defendant argued that the Court must determine whether he was convicted of an offense that qualifies as a sex offense under SORNA by using the categorical approach. Thus, the Court treats this as a separate, fourth issue.

17

to be arguing that the Government cannot show that he violated 18 U.S.C. § 2250(a) as a matter of law, because it cannot show that he is a sex offender required to register under SORNA. Before addressing the issue, the Court considers two preliminary issues: (1) whether the Court may determine pretrial that the Defendant does or does not qualify as a sex offender and (2) if yes, what facts may the Court consider.

### (1) Pretrial determination

Whether the Government can prove an element of the offense is generally a matter for the trier of fact to determine at trial. Federal Rule Criminal Procedure 12(b)(3)(B)(v) provides that "a defect in the indictment," specifically the failure to state an offense, "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Moreover, the Court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976).

From the case law and Rule 12(b)(3)(B)(v), the Court distills two requirements for addressing a motion to dismiss the indictment alleging that the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed. *Jones*, 542 F.2d at 665; *see also United States v. Fitzgerald*, No. 1:16-cr-178, 2017 WL 74074, *2 (6th Cir. Jan. 9, 2017) (examining whether undisputed facts in the criminal complaint constituted operating an airplane while under the influence of alcohol as a matter of law); *see also United States v. Vertz*, 40 F. App'x 69, 71 (6th Cir. 2002) (stating that "where the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in the indictment, the [c]ourt is reviewing a question of law, not fact"). In the instant case, the relevant facts—that the Defendant was convicted of sexual battery of a female in

18

violation of Va. Code Ann. § 18.2-67.4 in November 2002 and that the victim was a minor—are not in dispute.[12]   Accordingly, the Court finds the Defendant has raised an issue of law and undisputed fact that may be determined pursuant to a pretrial motion to dismiss the Indictment.

*(2) Analytical framework*

In order to determine whether the Defendant's 2002 Virginia conviction for sexual battery is a "sex offense" under SORNA, the Court must analyze whether that conviction meets the statutory definition of a "sex offense."   "The Supreme Court has developed three analytical frameworks that potentially control the scope of materials that a court may consider [and] the focus of the court's inquiry[:] . . . the 'categorical approach,' the 'modified categorical approach,' and . . . the 'circumstance-specific approach' (also known as the 'non-categorical approach')." *United States v. Price*, 777 F.3d 700, 704 (4th Cir.) (examining which analytical approach is appropriate for a motion to dismiss the indictment for failure to allege the Defendant was a sex offender required to register under SORNA), *cert. denied*, 135 S. Ct. 2911 (2015).   The "categorical approach," examines the elements of the statute of conviction to determine whether a defendant committed a qualifying offense. *Id.* at 704 (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990) (requiring the court "to look only to the fact of conviction and the statutory definition of the prior offense")).   The "modified categorial approach" also examines the elements but it is used when the statute of conviction is "divisible" (i.e., the statute contains alternative ways to commit the offense). *Id.* at 705.   The modified categorical approach permits the court to look to a limited number of documents from the underlying case (the "*Shepherd* documents,"[13] which are the

---

[12] The Court finds that the Defendant disputes whether the Court can consider the fact that the victim was a minor, not whether she was, in fact, a minor.

[13] The term "*Shepherd* documents" comes from *United States v. Shepherd*, 544 U.S. 13, 19-20 (2005).

indictment, the plea agreement or change-of-plea transcript, the ruling and factual findings at a bench trial, and the jury instructions) in order to "discern which alternative element formed the basis of conviction." *Id.* The "circumstance-specific approach" looks at the facts, not the elements, of the underlying offense. *Id.*

Defendant Skaggs argues that the Court must use the modified categorical approach[14] (and not look to the fact that the victim was a minor) to determine whether sexual battery of a female in violation of Va. Code Ann. § 18.2-67.4 is a sex offense for which one must register under SORNA. He contends that at trial, the Government would be limited to the *Shepherd* documents, which in this case consist only of the Virginia amended indictment and judgment, in order to prove he is a sex offender required to register under SORNA. The Government responds that the categorical approach only applies to punishment and, thus, is correctly employed at sentencing. It argues that SORNA is a civil registry, not punishment, and that the categorical approach does not apply.

Our appellate Court has not addressed which analytical framework is appropriate to use when assessing whether a defendant's prior conviction qualifies as a sex offense under SORNA, in the context of trial or a pretrial motion to dismiss the indictment. At the September 5 motion hearing, defense counsel referred the Court to *United States v. Barcus*, in which our appellate court used the categorical approach to determine whether a Tennessee conviction for attempted aggravated sexual battery of a victim under age thirteen renders the defendant a Tier III sex offender under SORNA for the purpose of determining the defendant's guidelines at sentencing. 892 F.3d 228, 231-32 (6th Cir. 2018). However, the three circuit courts to consider which

---

[14] Although defense counsel stated the categorical approach applies, her argument relates to the modified categorical approach, because she referenced the "Shepherd documents" and argued that the Virginia sexual battery statute is divisible.

20

analytical approach applies at the trial or pretrial phase, rather than the sentencing phase, have all chosen the circumstance-specific approach. *Price,* 777 F.3d at 710; *United States v. Dodge*, 597 F.3d 1347, 1356 (11th Cir.) (en banc), *cert. denied*, 562 U.S. 961 (2010); *United States v. Mi Kyung Byun*, 539 F.3d 990-94 (9th Cir.), *cert. denied,* 555 U.S. 1088 (2008).

In *Price*, the Court of Appeals for the Fourth Circuit found that the "text, structure, and purpose of the relevant SORNA provisions show that Congress intended for the circumstance-specific approach to apply[.]" 777 F.3d at 708. The court found that the language used in the definition of "sex offense," specifically the parts relating to minor victims, reveals that Congress intended the court to look to the nature of the conduct involved. *Id.* at 708-09. *But see United States v. Berry*, 814 F.3d 192, 199 (4th Cir. 2016) (indicating that a categorical approach may be appropriate in determining whether an offense involves sexual conduct or contact under § 20911(5)(i)). The Fourth Circuit also reasoned that the Sixth Amendment concerns motivating the use of the categorical approach at sentencing are not present at the trial or pretrial stage. *Price*, 777 F.3d at 710 (citing *Nijhawan v. Holder*, 557 U.S. 29, 40 (2009) (holding that the categorical approach is not required in determining whether an offense involves sexual conduct contact a deportation loss amount, because the jury in the subsequent illegal reentry trial would determine the loss amount beyond a reasonable doubt)). Like in *Price*, Defendant Skaggs is entitled to proceed to trial and have a jury determine beyond a reasonable doubt whether his 2002 Virginia sexual battery conviction is a sex offense under SORNA. *See id.* (finding that the jury would have examined the facts underlying the defendant's prior conviction to determine whether it met the definition of a sex offense under SORNA). Finally, the Court notes that in determining whether a charge constitutes an offense as a matter of law, the court may consider both the elements of the offense *and* any undisputed facts. *See Jones*, 542 F.2d at 665. This supports a finding that the circumstance-specific approach applies to the instant determination.

Although the weight of persuasive authority supports using the circumstances-specific approach, the Court need not make a definitive determination in this case. As discussed in the next two sections, the Court finds Defendant Skaggs's 2002 Virginia sexual battery conviction qualifies as a sex offense under SORNA under either the categorical or the circumstances-specific approach.

*(3) The Categorical Approach*

As discussed above, the categorical approach looks to the elements of the statute of conviction. "The elements comprising the statute of conviction must be the same as, or narrower than, those of the generic offense in order to find a categorical match." *Price*, 777 F.3d at 704 (citing Taylor, 495 U.S. at 599)). SORNA defines a "sex offender" as one "convicted of a sex offense." 34 U.S.C. § 20911(1). A "sex offense," in turn, is defined generally as "a criminal offense that has as an element involving a sexual act or contact with another[.]" 34 U.S.C. § 20911(5)(A)(i). In 2002, Virginia law proscribed sexual battery under § 18.2-67.4(A) as follows: "An accused is guilty of sexual battery if he sexually abuses, as defined in § 18.2-67.10, . . . the complaining witness against the will of the complaining witness, by force, threat, intimidation, or ruse[.]" "Sexual abuse" is defined in Virginia law as "an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts" or "forces the complaining witness to touch the accused's intimate parts or material directly covering such intimate parts[.]" Va. Code Ann. § 18.2-67.10(6)(a)-(b). Defense counsel contends that the Defendant's 2002 Virginia sexual battery conviction is not a sex offense under SORNA, because touching the material covering the victim's intimate parts is not a sexual act or contact.

In the instant case, the Court finds that Virginia sexual battery is a "sex offense" under SORNA. Under federal law,

"a 'sexual act'" is "intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). In the same vein, "sexual contact" "means the intentional touching, either directly *or through the clothing*, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

*Barcus*, 892 F.3d at 232 (emphasis added). Sexual battery under the Virginia statute involves touching the victim's intimate parts or the material covering the intimate parts with the intent to "sexually . . . gratify any person[.]" Va. Code Ann. §18.2-67(6). "'Intimate parts' means the genitalia, anus, groin, breast, or buttocks of any person." Va. Code Ann. § 18.2-67.10(2). Thus, the Court finds that Virginia sexual battery involves "sexual contact," as that term is defined under federal law. The Indictment does not fail to state an offense as a matter of law.

### (4) The Circumstance-Specific Approach

In the circumstance-specific approach, the Court "may consider reliable evidence concerning whether the prior offense involved conduct or circumstances that are required by the federal statute." *Price*, 777 F.3d at 705. SORNA also defines a sex offense as "a criminal offense that is a specified offense against a minor." 34 U.S.C. § 20911(5)(A)(ii). Specified offenses against minors are further defined as offenses such as kidnapping or false imprisonment by someone other than a parent or guardian; solicitation to use in sexual conduct or for prostitution; use in a sexual performance; possession, production, or distribution of child pornography or video voyeurism; "[c]riminal sexual conduct involving a minor"; or the catch-all category of "[a]ny conduct that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7)(A)-(I).

In the instant case, Defendant Skaggs's offense involved a minor victim. The Government argues that the Defendant was arrested for carnal knowledge of a child thirteen to fifteen years of age. Additionally, the Defendant's Virginia sex offender registration form from August 27, 2003,

23

lists his conviction as "Sexual Battery -Minor" [Doc. 50, p.2]. Defendant's Virginia sex offender registration form from May 5, 2006, states the victim was sixteen years old [Doc. 50, p.5]. The Court finds that sexual battery of a minor comes within both "criminal sexual conduct involving a minor," § 20911(7)(H), and the catchall category of "conduct that by its nature is a sex offense against a minor," § 20911(7)(I). Under the circumstance-specific approach, the Court finds that the Defendant's 2002 Virginia sexual battery offense is a sex offense for which he would be required to register under SORNA.

## V. CONCLUSION

The Court finds that the Indictment does not violate the Defendant's constitutional rights. Specifically, SORNA's requirement that he register as a sex offender, although his sexual battery conviction pre-dates SORNA's enactment, does not run afoul of the nondelegation doctrine, the *Ex Post Facto* Clause, or the Due Process Clause. Moreover, the Defendant's 2002 Virginia sexual battery conviction qualifies as a "sex offense" under SORNA. Accordingly, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss Indictment [Doc. 28] and the Supplemental Motion to Dismiss [Doc. 45] be denied.[15]

Respectfully submitted,

Bruce Guyton

United States Magistrate Judge

---

[15] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).